## 11987. WILLIAMSON & CO. v. MORGAN.

1. The statute of frauds is a personal defense, and unless made by demurrer, plea, or answer, will be treated as having been waived. It cannot be set up for the first time in the Court of Appeals.
2. Where "the party to be charged therewith" admits in a signed, written confirmation the making by him of a previous parol agreement complete in all the usual elements of a contract, this constitutes a compliance with the statute of frauds.
3. A parol contract was entered into, showing the sale and purchase of a specified number of bales of cotton of a definite grade and at a definite price, delivery to be made according to the prevailing custom in ten days after the date of the sale; and immediately after the parol contract was made, a written confirmation thereof was signed by the seller and delivered to the purchaser and accepted by him. The contract was not unilateral, as being only an offer or promise to sell the cotton, but it was an executed contract of sale, with constructive delivery of the cotton, and was mutually binding.

DECIDED APRIL 14, 1921.

Action on contract; from city court of Polk county — Judge Tison. November 19, 1920.

In this suit J. J. Williamson & Company sought to recover as

damages the difference between the contract price and the market price in the purchase and sale of 150 bales of cotton alleged to have been purchased by them from the defendant, J. A. Morgan. The facts briefly stated make the following case: Both parties were engaged in the business of buying and selling cotton. On October 22, 1918, the plaintiffs' agent, at Rockmart, bought for them from the defendant by parol contract 150 bales of cotton, and the contract was confirmed by the defendant on the same day by letter as follows: "Rockmart, Ga., Oct. 22, 1918. Messrs. J. J. Williamson & Co., Atlanta, Ga. Dear Sirs: Beg to confirm the sale of 150 bales of cotton sold to you to-day at 37¾ basis Atlanta 4's Atlanta grades and differences, f. o. b. Rockmart. Yours truly, J. A. Morgan." No actual date of delivery of the cotton is fixed by the contract. The evidence of the plaintiffs shows, however, that in the territory where this contract was made it was the custom for the purchaser to take up deliveries within ten days after purchase, and, according to their agent, the seller knew, at the time of making the contract, that the purchasers, through their agent, would not take the cotton for some days, as the agent was then leaving Rockmart to inspect and receive cotton bought at other points. On the afternoon of October 27, five days afterwards, the plaintiffs in Atlanta called up the defendant over the telephone, and asked what date would be agreeable to deliver and pay for the cotton. The defendant answered that the time for such delivery would expire that day at sundown, and that if the cotton were not called for and paid for before that time, the trade would be off. It was then too late for the plaintiffs to reach Rockmart by any train that afternoon and the defendant was notified that the plaintiffs considered the trade still binding and would call for the cotton the next day and their agent was sent by the next morning's train with the money to receive and pay for the cotton. On arriving at Rockmart the agent found that the defendant had already sold the cotton and was in the act of delivering it to another party, and refused to carry out the contract with the plaintiffs. The evidence is uncontradicted that the difference in the contract price and the market price was $1,312.50, for which amount the suit was brought.

According to the testimony of the plaintiffs' agent, he asked the defendant at Rockmart if he (the defendant) was offering any cot-

ton that day, and the defendant answered that he had offered 150 bales at 37¾ cents that day, and the agent asked if the defendant would allow him to make that offer if the other party did not take it. The agent testified: After a while " he said I might make the offer. I went over to the hotel and offered it to my house at 37¾ cents and they took it. I went back and told him they would take it, and wrote out a confirmation. I gave it to him and he said it was all right." This refers to the confirmation heretofore set out in full in this statement. The defendant in his testimony admitted substantially the facts as stated above. He admitted the sale of the cotton, the confirmation of the sale of the cotton, and all that took place subsequently, but denied that there was a custom to give ten days for delivery by the seller to the purchaser of the cotton bought; stating that he did not know of any such custom, but that usually, in making sales in Rockmart, time was sacrificed for delivery, unless the cotton was taken up at the time of the sale, and as to this sale it was understood by the plaintiffs' agent and himself that the 150 bales of cotton which had been sold on October 22 would be taken up "any time during the week or any time during the day of October 28, Tuesday." There was no mention of any custom or reasonable time to take up the cotton. At the conclusion of the evidence, on motion of the defendant, a nonsuit was awarded. The plaintiffs' motion for a new trial, based upon the usual general grounds, was overruled, and they excepted.

*E. S. Ault, Frank A. Hooper & Son,* for plaintiff in error.

*Mundy & Watkins,* contra.

HILL, J. (After stating the foregoing facts.) Counsel for the plaintiffs and the defendant differ as to the grounds upon which the nonsuit was based, counsel for the plaintiffs insisting that the only ground upon which the motion for a nonsuit was made and the only ground that was considered by the court was that the contract sued upon was unilateral, and counsel for the defendant insisting that it was also insisted by the defendant that the contract was not in writing as required by the statute of frauds, and falls within § 3222 of the Civil Code (1910), which is a codification of that statute. Whatever may be the fact as to this, the record shows that the statute of frauds was not properly before the trial court. It has been frequently held in this State that the statute of frauds must be set up in the trial court by a special

plea, and that the defendant waives this defense if it is not pleaded. *Marks* v. *Talmadge,* 8 *Ga. App.* 559 (69 S. E. 1131), and cases cited.   Another reason why the statute of frauds was not in the case in the court below and is not in it here is that the defendant's plea admits the making of the contract, admits the confirmation of the contract by him in writing, admits the consideration of the contract, and claims a breach upon the part of the plaintiff in not taking up or receiving the cotton and paying for it within the period alleged by the defendant; and this would be sufficient of itself to take the case out of the operation of the statute of frauds. *Capital City Brick Co.* v. *Atlanta Ice Co.,* 5 *Ga. App.* 443 (63 S. E. 562), and decisions cited.   Still another reason why the judgment of nonsuit was not based upon the statute of frauds is the fact, shown by the record, that the statute of frauds was complied with by the defendant, who was the party to be charged.   The statute of frauds does not require that the contract shall be signed by both parties to the contract.   The statute of frauds provides that to make the obligations there mentioned binding on the promisor, the promise must be in writing, " signed by the party charged therewith, or some person by him lawfully authorized." Civil Code, § 3222.   In other words, it is not necessary that both parties shall sign the contract to bring it within the statute, but only that the party sought to be bound by it shall have signed it. The contract might be created by a verbal agreement, and if subsequently recognized in writing signed by the party to be charged therewith, showing that the contract created orally was in fact made, the statute would be complied with, provided, of course, that it be shown by the subsequent writing or series of writings that the contract was made and was fully intelligible without parol evidence.   *Capital City Brick Co.* v. *Atlanta Ice Co.,* supra.   The evidence in this case shows that the defendant admitted the creation of the contract to which the agent of the plaintiffs testified, and that almost contemporaneously therewith the defendant, the party to be charged, confirmed the parol contract explicitly and fully, and the confirmation showed an agreement coextensive with the stipulations of the parol contract.

Was the contract unilateral?   This expression, frequently used by the courts and the text-writers, is a contradiction in terms.   A contract must have two or more parties in full accord as to all of its terms and must be binding upon all parties thereto.   A writing

or paper alleged to be a contract, binding only upon one party and not binding the other, is not a contract at all. It is simply "a scrap of paper." Parties to a contract may not be bound in the same way or to the same extent, but each party to the contract must be bound according to the terms of .the contract, and, of course, in all contracts a consideration is a necessary condition precedent to the legality of the contract, although a promise is a valid consideration for a promise. Leaving out of the question therefore the statute of frauds, and not confusing it with the subsequent grounds of discussion, does the evidence show a valid contract in this case, or does the evidence merely show an offer to make a contract, which could be withdrawn by the offerer at any time prior to the other party doing some act which will bind him? It is insisted by the defendant that there was no binding contract, because the plaintiffs were not bound; that he entered into the obligation to sell the cotton, but that the plaintiffs made no obligation to pay for it or to take it when it was offered, and therefore the contract was not mutual. Here there was no promise to sell cotton and no promise to take the cotton in the future, but there was a positive present sale of 150 bales of cotton by the defendant to the plaintiffs, through the agent of the plaintiffs, at a definite price and of a definite grade. In other words it was a cash sale of spot cotton. True, there was no delivery of the cotton, but, according to the plaintiffs' evidence, there was a custom existing in the territory that a delivery made within ten days was a full compliance with that feature of the contract. Immediately after this parol contract was entered into it was confirmed in writing specifically identifying the parol contract in all its terms, and this confirmation by the defendant was delivered to the plantiffs and accepted by them. Both parties to the contract were bound by its terms; one to deliver within ten days to the purchasers the cotton so sold, and the other to receive and pay for the cotton when delivered or when offered within ten days. Could it be doubted that the obligation to accept and pay for it according to the terms of the contract was binding upon the purchasers, as well as that the obligation to deliver within ten days was binding upon the seller? Without extending this discussion, we think that under the evidence in this case the contract upon which the suit is predicated was first created as a parol contract to which both parties assented;

that the confirmation in writing subsequently made by the defendant and accepted by the plaintiffs did not affect the nature of the contract, but simply furnished. evidence of its previous oral creation; and that the contract was binding upon both parties provided the jury on the trial of the case should find that there existed a general custom relating to the sale of cotton in that territory which gave ten days to the purchaser to receive and pay for the cotton; and that if the plaintiffs did actually offer to receive it and pay for it within ten days, the custom existing, it was a duty, arising under the contract, for the defendant to deliver the cotton and accept the money. After the cotton had been purchased by the plaintiffs through their agent, and before the expiration of the ten days, if it had been offered to them by the defendants, and they had refused to accept it and pay for it, can it be doubted that they would have been responsible to the plaintiff for any damages resulting from such breach of the contract? Not only had the plaintiffs and the defendant made the contract, but the plaintiffs had asked the defendant for a written confirmation of the contract, which confirmation was made by him and accepted by them; and if after these things were done they had refused to receive the cotton and pay for it, if tendered within ten days by the defendant, relying upon his contract with them, and the price of cotton had gone down in the meantime, he could have recovered for their breach of the contract. The case should have been submitted to the jury, and the court erred in granting a nonsuit and refusing to grant the plaintiffs' motion for a new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*